JERONICA BRISTER,

        Plaintiff,

  v.

        Case No. 24-cv-8-pp

CIARA M. SHANKS,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

On January 2, 2024, the plaintiff—who is representing herself—filed a complaint, accusing the defendant of "doxing,[1] libel per se, slander per se, blackmail, harassment and injunctive relief." Dkt. No. 1 at ¶2. The same day, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. Id. But as the court will discuss below, it appears that this federal court does not have subject-matter jurisdiction. The

---

[1] "Doxing," or "doxxing," "involves releasing someone's personal details onto the Internet in an easily accessible form . . . [and] [i]t may be used to humiliate, intimidate, threaten, or punish the identified individual." Lord v. Smith, Case No. 22 C 2689, 2022 WL 17668707, at *4 n.4 (N.D. Ill. Dec. 14, 2022) (citing David M. Douglas, Doxing: A Conceptual Analysis, 18 ETHICS INFO. TECH. 199, 199 (2016)); see also Dye v. City of Bloomington, Ind., Case No. 20-cv-00518-RLY-DML, 2022 WL 2128261, at *2 (S.D. Ind. Jan. 19, 2022) ("'Doxing' refers to publicly identifying someone or publishing private information about someone as a form of punishment or revenge.").

1

court will give the plaintiff the opportunity to file an amended complaint that states a basis for this court to exercise subject-matter jurisdiction.

I.  **Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose her financial condition, and must do so truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff's affidavit indicates that she is self-employed at "JBS Nails LLC" and that she receives $1,500 in monthly income. Dkt. No. 2 at 1-2. The plaintiff states that she is not married and that she is fully responsible for four dependent children. Id at 1. The plaintiff asserts that she pays $2,523 in total monthly expenses ($800 in rent, $700 for other household expenses and $1025 in business expenses). Id. at 2-3. The plaintiff reports she does not own a car, a home, or any other property of value. Id. at 3-4. Finally, the plaintiff says she has $45 in cash or in an account, and that she is currently behind on rent. Id.

Based on the information in the plaintiff's affidavit, the court concludes that the plaintiff does not have the ability to prepay the filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court advises the plaintiff, however that she still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997);

2

see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee.

## II.     Screening the Complaint

### A.     Legal Standard

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that she is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). A plaintiff does not need to plead every fact supporting her claims; she needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64. A document filed by a person who is representing herself must be "liberally construed," and a complaint filed by someone representing herself, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The court must also determine if it has subject-matter jurisdiction, because "[s]ubject-matter jurisdiction is the first issue in any case[,]" Miller v. Southwest Airlines Co., 926 F.3d 898, 902 (7th Cir. 2019), and the court has "an independent obligation to determine that jurisdictional requirements are satisfied[,]" Knopick v. Jayco, Inc., 895 F.3d 525, 528 (7th Cir. 2018). "[S]ubject matter jurisdiction is a fundamental limitation on the power of a federal court to act," Del Vecchio v. Conseco, Inc., 230 F.3d 974, 980 (7th Cir. 2000), that "cannot be waived, forfeited, or consented to by the parties," Fortier v. Terani L. Firm, 732 F. App'x 467, 468 (7th Cir. 2018). "Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." Craig v. Ontario Corp., 543 F.3d 872, 875 (7th Cir. 2008). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. Civ. R. 12(h)(3). The plaintiff has the burden to prove that the court has subject-matter jurisdiction. Lee v. City of Chicago, 330

F.3d 456, 468 (7th Cir. 2003) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

As courts of limited jurisdiction, federal courts have subject-matter jurisdiction in two primary types of cases: (1) cases alleging violations of federal laws or the federal Constitution ("federal question" jurisdiction under 28 U.S.C. §1331) and (2) cases between citizens of different states that involve an amount in controversy exceeding $75,000.00 ("diversity" jurisdiction under 28 U.S.C. §1332). See E. Cent. Ill. Pipe Trades Health & Welfare Fund, 3 F.4th at 957 ("While state courts are courts of general jurisdiction—essentially open to all comers on all matters—federal courts are courts of limited jurisdiction.") A plaintiff properly invokes §1331 federal question jurisdiction when she pleads a colorable claim arising under the Constitution or the laws of the United States. See Hero v. Lake Cnty. Election Bd., 42 F.4th 768, 775 (7th Cir. 2022) ("A federal statute that creates a "cause of action" raises a "federal question." (citing Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10, 966 F.3d 661, 673 (7th Cir. 2020)). "The well-pleaded rule requires that a federal question be 'apparent on the face' of the complaint." Id. (quoting Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc., 707 F.3d 883, 890 (7th Cir. 2013)). Diversity jurisdiction exists when the amount in controversy exceeds $75,000 exclusive of interest and costs, and the parties are citizens of different states. 28 U.S.C. §1332(a). In other words, diversity jurisdiction under §1332 exists where "no party on the plaintiff's side of the suit shares citizenship with any party on the defendant's side." Page v.

5

Democratic Nat'l Comm., 2 F.4th 630, 636 (7th Cir. 2021) (citing Wis. Dep't of Corr. v. Schact, 524 U.S. 381, 288 (1998)).

B. The Plaintiff's Allegations

The complaint identifies the plaintiff as "a licensed nail technician," as well as "a Certified Reiki II practitioner, and an Awo of IFA ('Ifadayomi Orimoloye Efunwunnmi')." Id. at ¶3. It does not, however, identify the plaintiff's state of residency. The plaintiff did not sign the complaint (although a Wisconsin notary public notarized it, id. at page 11). At the end of the complaint, someone has hand-written the words "c/o 3373 North 23rd Street, Milwaukee, Wisconsin 53206." Id. at 11. There is no explanation of whether this is the plaintiff's address, the notary's address or someone else's address. The complaint describes the defendant as "a Wisconsin Native, who operates . . . [several] businesses[,]" and is "a published author, podcaster, and wellness/business coach." Id. at ¶4. It does not say, however, whether the defendant lives in Wisconsin now, or lived in Wisconsin at the time of the events described in the complaint. Based on this information, there is no way for the court to determine whether the plaintiff and the defendant are residents of different states.

The complaint alleges that around January 2022, the plaintiff removed herself from a group chat, which included the defendant. Id. at ¶5. It alleges that on June 23, 2022, the plaintiff responded to a group text the defendant had created, letting the defendant know that the plaintiff no longer desired to associate with her. Id. at ¶6. The defendant replied that she respected the

plaintiff's wishes. Id. at ¶7. In the following two months, the defendant contacted the plaintiff twice: first, by texting the plaintiff about the birth of the plaintiff's child and second, by tagging the plaintiff's business in an online post. Id. at ¶¶8-9.

On November 25, 2023, the plaintiff received a video of the defendant "slandering her career and her religious beliefs[.]" Id. at ¶10. The same day, the plaintiff observed a video posted by the defendant, which included various negative posts the defendant had made about the plaintiff earlier in the year. Id. at ¶11. The defendant allegedly posted, "ya'll wanna see a dead body? Then go scroll me on TikTok in 30 minutes," and attached several September 2023 posts about the plaintiff. Id. One of the posts allegedly asked whether "ya'll kn[e]w checking in with somebody while they're pregnant AGAIN with a cheaters baby is offensive." Id. Another said that the defendant had heard "you been scamming people." Id. Another post from the defendant stated:

> That reconciliation door is NAILED shut. Our time was beautiful. I wrote about it. I'll be announcing my 3rd book on the 20th. But it's dead. Dead AF. And don't worry - your names were redacted.

Id. The complaint alleges that the defendant has not received consent from the plaintiff to use the plaintiff's likeness, life story or character in any of the defendant's literary works. Id. at ¶12.

The following day, "[the plaintiff] text[ed] [the defendant] privately to discuss the nature of the slanderous video, to inform [the defendant] that her statements were false and defamatory, and to send the address information for [the defendant]'s legal team, as [the defendant] had stated that she would be

7

seeing [the plaintiff] in court." Id. at ¶13. That same day, the plaintiff "reached out to a mutual associate, informing her of [the plaintiff's] decision to discontinue the association as a result of [the defendant]'s behavior and intentions." Id. at ¶14. The defendant "shared . . . the private message from the mutual associate on twitter" with derogatory commentary, and publicly posted a series of negative statements about the plaintiff. Id. at ¶¶15-18. Among these statements, the defendant told the plaintiff to "go to hell" and that she would "see [the plaintiff] in court." Id. at ¶16.b.

On November 27, 2022, the defendant "went live on Facebook, doxing [the plaintiff], sharing personal information that she had shared with [the defendant] regarding her relationship at the time, that was never publicized by the [the plaintiff] herself." Id. at ¶19. The same day, the defendant continually posted on Twitter about the plaintiff, making statements like "B*tches don't want EVERYTHING leaked." Id. at ¶20. On or about November 28th, 2022, the plaintiff "sent a cease and desist notice from her revocable living trust, to the [the defendant]'s last known address that was returned to sender." Id. at ¶21. On November 29, 2022, the defendant posted on Facebook, stating that the plaintiff "been committing (interstate) bank fraud and judgements on payday loans." Id. at ¶22.

The plaintiff disputes many of the negative statements the defendant made about her. Id. at ¶¶26-33. The plaintiff claims that she never gave the defendant permission to share her private information or to "use[] the trademarked name 'JERONICA BRISTER[.]'" Id. at ¶¶12, 39-40. The plaintiff

alleges that the defendant "admitted via twitter that she is acting with malicious intent." Id. at ¶25. The plaintiff claims that, "[i]n spite of the numerous, unwarranted and unprovoked statements [made by the defendant], [the plaintiff] never took to social media once about [the defendant]." Id. at ¶23. The plaintiff contends that the defendant's "actions caused Plaintiff emotional distress, a reduction in her Instagram followers, and reputational harm." Id. at ¶38. For relief, the plaintiff requests that

> a judgment [] be entered in the favor of the [plaintiff] for the amount of $587,600.00, injunctive relief, a public apology to [the plaintiff] on all platforms from [the defendant], removal of all forms of defamation, doxing, and extortion, including all forms of subliminal posts and videos about [the plaintiff], proceeds of all published book sales that contain the likeness, character, or story of the [plaintiff], or complete removal of the [plaintiff]'s likeness, characteristics, or storyline from all books ever published by the [defendant].

Id. at 10-11.

C. Analysis

The plaintiff did not use this court's form complaint form, which would have required her to mark a box reflecting whether she is asserting that the court has "federal question" jurisdiction under 28 U.S.C. §1331 or "diversity" jurisdiction under 28 U.S.C. §1332. Nor did she state in the complaint whether she was asserting that the court has federal question or diversity jurisdiction. The complaint, however, does not assert facts that would allow the court to exercise either form of subject-matter jurisdiction.

The plaintiff has not alleged facts to support the court's exercise of diversity jurisdiction, because she has not alleged that she and the defendant are citizens of different states. Although the complaint alleges an amount in

9

controversy exceeding $75,000, the complaint does not establish the state citizenship of either party. Page, 2 F.4th at 634 ("[I]t has long been established that natural persons are typically a citizen of the state in which they reside or—to be more precise—are 'domiciled.'"); see also Sheneman, 682 F. App'x at 499 ("[D]omicile in a particular state requires physical presence while intending to remain there[.]"). Absent information about where the parties are domiciled, the court cannot determine that diversity jurisdiction exists.

As for federal question jurisdiction, the complaint does not allege a colorable claim arising under the Constitution or the laws of the United States. The plaintiff has pled claims "for doxing, libel per se, slander per se, blackmail, harassment and injunctive relief." Dkt. No. 1 at ¶2. None of these claims arise under the Constitution or federal law; they are *state* law claims. See Hannah Shankman, *How to Close Pandora's Dox: A Case for the Federal Regulation of Doxing*, 33 U. FLA. J.L. & PUB. POL'Y 273, 293-94 (2023) ("[N]o federal statute specifically addresses doxing," and only a few states have "enacted laws explicitly targeting the practice of 'doxing[.]'"); Frank D. LoMonte & Paola Fiku, *Thinking Outside the Dox: The First Amendment and the Right to Disclose Personal Information*, 91 UMKC L. REV. 1, 3 (2022) ("As of the end of 2021, seven states—Arizona, Colorado, Florida, Kentucky, Minnesota, Oklahoma, and Oregon—had enacted laws explicitly targeting the practice of 'doxing,' which lawmakers have generally defined as involuntarily disseminating home contact information about police officers and others with sensitive jobs who might be targets of vengeful people.")); Rodriguez v. Crim. Just. Facility, Case No. 23-CV-

10

394-PP, 2023 WL 3467507, at *1 (E.D. Wis. May 15, 2023) ("[D]efamation and libel are state law causes of action"); Johnson v. Cooper, No. 22-cv-1057-pp, 2022 WL 10075268, at *3 n.2 (E.D. Wis. Oct. 17, 2022) ("[S]tate law prohibits slander and defamation and people who want to sue for allegations of slander and defamation normally must bring those lawsuits in state court."); Slottke v. State of Wis. Dep't of Indus. Lab. & Hum. Rels., Case No. 16-cv-1392-pp, 2017 WL 4990572, at *4 (E.D. Wis. Oct. 30, 2017)) ("[T]here is no federal civil cause of action for blackmail[.]"); Dudley v. Eggert, Case No.14-CV-1061, 2014 WL 4098141, at *2 (C.D. Ill. Aug. 19, 2014) ("Allegations against a private citizen for harassment or attempted false imprisonment are generally matters for state court because they do not implicate a federal cause of action."). Because the complaint alleges only claims arising under state law, this federal court does not have federal question jurisdiction.

Because the complaint does not allege sufficient facts to support diversity or subject-matter jurisdiction, this federal court does not have the authority to hear and decide the case. When a federal court does not have subject-matter jurisdiction, it must dismiss the case. Fed. Civ. R. 12(h)(3). That said, the Seventh Circuit Court of Appeals has long held that "district courts have a special responsibility to construe . . . complaints [filed by self-represented persons] liberally and to allow ample opportunity for amending the complaint when it appears that by doing so the [self-represented] litigant would be able to state a meritorious claim." Kiebala v. Boris, 928 F.3d 680, 684 (7th Cir. 2019) (quoting Donald v. Cook Cnty. Sheriff's Dep't, 94 F.3d 548, 555 (7th

Cir. 1996)). Because the plaintiff is representing herself, the court will give her one opportunity to amend her complaint, in case she is able to assert facts to demonstrate that this federal court has subject-matter jurisdiction over her claims.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form if she chooses to file an amended complaint. See Civil Local Rule 9(b). (E.D. Wis.). The plaintiff must list the case number for this case on the first page. She must list all the defendants she wants to sue in the caption of the amended complaint. She should use the spaces on pages two and three to explain the key facts that give rise to the claims she wishes to bring, and to describe which defendants she believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to three additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint. She must re-state all the facts from her original complaint that she believes are important to her claim, along with any additional facts that might show that the court has subject-matter jurisdiction.

When writing her amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated her rights?; 2) What did each person do to violate her rights?; 3) Where did each person violate her rights?; and 4) When did each person violate her rights? The amended complaint does not need to be long or contain legal language or

citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate her rights.

If the plaintiff files an amended complaint that complies with the requirements in this order by the deadline the court sets below, the court will screen it to determine whether the court has jurisdiction and whether the amended complaint states a claim. If the court does not receive an amended complaint by the deadline the court sets below, the court will dismiss the case without further notice or hearing.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, she must file an amended complaint in time for the court to *receive it* by the end of the day on **June 7, 2024**. If the court does not receive an amended complaint, or a motion asking for additional time to file one, by the end of the day on June 7, 2024, the court will dismiss this case for lack of subject-matter jurisdiction without further notice or hearing.

Dated in Milwaukee, Wisconsin this 30th day of April, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

13

Case 2:24-cv-00008-PP   Filed 04/30/24   Page 13 of 13   Document 6