UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERONICA SAROME BRISTER,

                    Plaintiff,

                                                    Case No. 24-cv-8-pp

        v.

CIARA MONIQUE SHANKS,

                    Defendant.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 7) AND DISMISSING CASE**

On January 2, 2024, the plaintiff—who is representing herself—filed a complaint accusing the defendant of "doxing, libel per se, slander per se, blackmail, harassment and injunctive relief." Dkt. No. 1 at ¶2. The court screened the complaint and determined that it did not establish a basis for the court to exercise subject-matter jurisdiction. Dkt. No. 6 at 1–2. The court gave the plaintiff an opportunity to file an amended complaint. Id. at 13. On June 7, 2024, the court received from the plaintiff an amended complaint. Dkt. No. 7. Because the amended complaint fails to state a claim for relief, the court will dismiss the case.

I.      **Screening**

        A.      <u>Legal Standard</u>

The court must "screen" the amended complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to

1

state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). Courts must "liberally construe[]" documents filed by self-represented litigants. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Although courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8, which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To proceed, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

    B.   <u>The Plaintiff's Allegations</u>

The title of the amended complaint says that the plaintiff is asserting claims for slander *per se*, libel *per se*, defamation, cyberstalking, stalking, extortion and intentional infliction of emotional distress under North Carolina state law. Dkt. No. 7 at ¶1. The plaintiff states that she is a nail technician,

2

author, songwriter and poet "professionally known as 'JB the traveling Nail Tech,'" as well as a practitioner of Reiki healing and "an Awo of IFA."[1] Id. at ¶¶6, 8. She states that the defendant is a former friend of the plaintiff who operates a business under the name "See Monique." Id. at ¶¶10–11. The amended complaint alleges that the defendant is a citizen and resident of the state of North Carolina. Id. at ¶3.

The plaintiff's claims arise out of the 2022-2023 breakdown of the friendship between the plaintiff and defendant. On June 23, 2022, the plaintiff told the defendant that she no longer wanted to speak with the defendant. Id. at ¶16. The plaintiff asserts that the defendant continued to try to contact her via text and social media until the plaintiff blocked the defendant. Id. at ¶¶18–20.

The plaintiff states that on November 25, 2023, she received a TikTok video of the defendant "slandering [the plaintiff's] career and her religious beliefs" and criticizing the plaintiff's Ifa practice. Id. at ¶21. The plaintiff alleges that the defendant accused her of "scamming people," threatened legal action and stated that the defendant was going to write a book about the plaintiff. Id. at ¶22. The plaintiff alleges that the following day, the plaintiff texted the defendant to discuss the video and informed the defendant that her statements

---

[1] The Ifa divination system, which makes use of an extensive corpus of texts and mathematical formulas, is practiced among Yoruba communities and by the African diaspora in the Americas and the Caribbean. The word "Ifa" refers to the mystical figure Ifa or Orunmila, regarded by the Yoruba as the deity of wisdom and intellectual development. https://ich.unesco.org/en/RL/ifa-divination-system-00146.

were "false and defamatory." Id. at ¶24. She states that she also messaged a "mutual associate, informing her of her decision to discontinue the association as a result of Defendant's behavior and intentions." Id. at ¶25. The plaintiff says that the defendant posted the message on Twitter and again accused the plaintiff of being a "fake" Ifa practitioner and threatened litigation. Id. at ¶¶26–30. She asserts that the defendant went "live" on Facebook and shared personal information about the plaintiff regarding the plaintiff's children, her intimate relationships and other private information. Id. at ¶30.

The plaintiff says that on November 28, 2023, she sent the defendant a cease-and-desist "notice from her revocable living trust to the Defendant's last known address that was returned to sender." Id. at ¶32. The plaintiff asserts that the defendant has continued to post TikTok videos, Tweets and Facebook posts and videos about the plaintiff, including private information that the plaintiff did not want shared with third parties; the plaintiff alleges that the defendant has admitted acting with "malicious intent." Id. at ¶¶35–37.

The plaintiff alleges that the defendant's statements about her are false. Id. at ¶¶39–44. The plaintiff asserts that the defendant knew her statements were false and that the statements were intended to harass and intimidate the plaintiff. Id. at ¶¶51, 57–58. The plaintiff alleges that she has been experiencing physical and emotional harm because of the defendant's harassment and has suffered reputational harm. Id. at ¶¶48–49. The plaintiff also asserts that she is entitled to punitive damages and litigation expenses. Id. at ¶¶106–10.

C.    Analysis

The court ordered the plaintiff to file an amended complaint because her original complaint did not state a basis for subject-matter jurisdiction. In the amended complaint, the plaintiff alleges that she is a citizen of Wisconsin, that the defendant is a citizen of North Carolina and that there is more than $75,000 in controversy. Dkt No. 7 at ¶4. The court takes those allegations as true at the pleading stage, and they are enough to state a basis for the court to exercise diversity jurisdiction.

The court now must consider whether the amended complaint states a claim for relief. 28 U.S.C. §1915A(b). The plaintiff's first claim is for slander *per se* "under N.C. Gen. Stat. §1-539.1." Id. at ¶¶60. That is a North Carolina statute governing damages for unlawful cutting, removal or burning of timber and misrepresentation of property lines. In North Carolina, slander claims are governed by the common law, not by statute. To state a claim for slander *per se* under North Carolina law, a plaintiff must allege that "(1) th[e] defendant's statement was slanderous per se, (2) the statement was false, and (3) the statement was published or communicated to and understood by a third person." Shillington v. K–Mart Corp., 402 S.E.2d 155, 159 (N.C. Ct. App. 1991). "Slander per se is a false oral communication that amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in [her] trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease. Eli Rsch., Inc. v. United Commc'ns Grp., LLC, 312 F. Supp. 2d 748, 761 (M.D.N.C.

5

2004) (citing <u>Barker v. Kimberly–Clark Corp.</u>, 524 S.E.2d 821, 824 (N.C. Ct. App. 2000)). Statements impeaching the plaintiff's business "(1) must touch the plaintiff in [her] special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on [her] business." <u>Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC</u>, 976 F. Supp. 2d 706, 715 (M.D.N.C. 2013) (quoting <u>Badame v. Lampke</u>, 89 S.E.2d 466, 468 (N.C. 1955)). "In a business context, a statement that does not 'assert any illegal or wrongful activity' by the plaintiff, generally does not rise to the level of defamation recognized under North Carolina law." <u>Diagnostic Devices. Inc. v. Doctor Diabetic Supply, Inc.</u>, Case No. 09-cv-135, 2010 WL 143094, at *2 (W.D.N.C. Jan. 11, 2010). Further, "expressions of opinion not asserting provable facts" are not defamatory. <u>Id.</u> (quoting <u>Daniels v. Metro Magazine Holding Co.</u>, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006)).

The plaintiff has not identified which specific oral statements she believes constitute slander *per se.* The only alleged oral statement that might impugn the plaintiff's business is the assertion that the plaintiff "doesn't know[] what she's doing" regarding her Ifa practice. Dkt. No. 7 at ¶21. Although this and the defendant's other oral statements may have been offensive or insulting, they do not rise to the level of slander *per se* because they do not assert any illegal or wrongful activity and are expressions of opinion that are not capable of being proven or disproven. The plaintiff cannot proceed with a slander *per se* claim against the defendant.

The plaintiff's second claim is for libel *per se*, again improperly alleged to be a violation of "N.C. Gen. Stat. §1-539.1." Dkt. No. 7 at ¶67. The same basic standards govern both slander and libel *per se* claims; the difference is that libel is written while slander is oral. See Eli Rsch., 312 F. Supp. 2d at 761 (citing Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002)). As with her slander claim, the plaintiff has not identified which specific written statements she believes constitute libel *per se*. The two written statements that might affect the plaintiff's business reputation are the alleged statements that she is "scamming people" and that she is "fake practicing ifa." Dkt. No. 7 at ¶¶22, 29. Again, although these statements may have been insulting and offensive to the plaintiff, the amended complaint does not allege facts showing that they could demonstrably be proven true or false or that they constitute anything other than the defendant's opinion. Because the plaintiff's allegations do not rise to the level of libel *per se*, the court will dismiss this claim.

The plaintiff next alleges an extortion claim under N.C. Gen. Stat. §14-118.4. Dkt. No. 7 at ¶74. But that is a criminal statute. A private person cannot sue another person for a violation of criminal law. See Andrews v. Land, 736 S.E.2d 649 (Table), 2013 WL 152277, *2 (N.C. Ct. App. 2013). There is no civil cause of action for extortion under North Carolina law. Hester v. Hubert Vester Ford, Inc., 767 S.E.2d 129, 136 (N.C. Ct. App. 2015) (citing Free Spirit Aviation, Inc. v. Rutherford Airport Auth., 664 S.E.2d 8, 12 (N.C. Ct. App.

7

2008)). Because the plaintiff has no legal basis to bring an extortion claim under North Carolina law, the court will dismiss the claim.

The plaintiff's claims for cyberstalking and stalking fail for the same reason. The plaintiff alleged these claims under N.C. Gen. Stat. §14-196.3 and §14-277.3A. Both are criminal statutes. North Carolina does not recognize a civil cause of action for cyberstalking. And although a plaintiff can allege stalking as grounds for a civil no-contact order, see N.C. Gen. Stat. §50C-1, that is not what the plaintiff is seeking here. The amended complaint seeks damages and an injunction preventing the defendant from making any further statements about the plaintiff. Because the plaintiff has no grounds to bring a civil action for damages for cyberstalking or stalking, the court will dismiss those claims.

Finally, the plaintiff brings a claim for intentional infliction of emotional distress. Dkt. No. 7 at ¶96. The plaintiff does not explain under which state's law she intends to bring this claim, but the court will assume it is North Carolina law because she brought all the other claims in the amended complaint under North Carolina law. "To state a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must allege that the defendant '(1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress.'" Boone v. Kabbani, Case No. 10CV1, 2010 WL 11668201, at *2 (M.D.N.C. Oct. 18, 2010) (quoting S. Furniture Hardware, Inc. v. BB&T, 526 S.E.2d 197, 201 (N.C. Ct. App. 2000)). For conduct to be considered extreme and outrageous, the

8

conduct must "exceed[] all bounds usually tolerated by decent society." Id. (quoting Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 477 S.E.2d 59, 72 (N.C. Ct. App. 1996)). "Liability for this tort 'clearly does not extend to mere insults, or indignities.'" Fieldcrest Cannon, 477 S.E.2d at 72 (quoting Wagoner v. Elkin City Schools' Bd. of Education, 440 S.E.2d 119, 123 (N.C. Ct. App. 1994)).

The allegations in the complaint do not rise to the level of "extreme and outrageous conduct" as required for this tort. The defendant's alleged statements, while offensive, fall into the category of insults and indignities that are not extreme or outrageous enough to state a claim. See Patel v. Scotland Mem'l Hosp., Case No. 94CV00284, 1995 WL 319213, at *4 (M.D.N.C. Mar. 31, 1995), aff'd, 91 F.3d 132 (4th Cir. 1996) (allegations that defendants spread falsehoods about plaintiff's professional performance were not "extreme and outrageous" conduct). The court will dismiss the plaintiff's claim for intentional infliction of emotional distress.

Because the court is dismissing the plaintiff's substantive claims, the court also will dismiss the plaintiff's claims for punitive damages and litigation expenses.

## II.     Leave to Amend

The court already has given the plaintiff permission to amend her complaint once. Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-

1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing <u>Runnion <i>ex rel.</i></u> <u>Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.</u>, 786 F.3d 510, 519–20 (7th Cir. 2015)). The complaint is thorough in its allegations of the facts comprising the plaintiff's claims (it is twenty-three pages without the signature page), and the court is certain that further amendment would be futile. The court will not give the plaintiff the opportunity to file a second amended complaint.

## III. Conclusion

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim upon which a federal court can grant relief. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 23rd day of April, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**